IN THE MATTER OF THE APPEAL OF THE CITIES OF CLIFTON AND PATERSON FROM THE DETERMINATION OF THE DIVISION OF TAX APPEALS IN THE APPEAL OF THE CITY OF PASSAIC, PLAINTIFFS-APPELLANTS, v. PASSAIC COUNTY BOARD OF TAXATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 21, 1964—Decided December 1, 1964.

Before Judges GAULKIN, FOLEY and COLLESTER.

*Mr. Nicholas G. Mandak,* First Legal Assistant, argued the cause for appellant City of Clifton (*Mr. Sam Monchak,* City Counsel, attorney).

*Mr. Adolph Romei,* City Attorney, argued the cause for appellant City of Paterson.

*Mr. Herbert S. Alterman,* City Counsel, argued the cause for respondent City of Passaic.

*Mr. Joseph A. Hoffman,* Deputy Attorney General, filed a statement in lieu of brief for respondent Passaic County Board of Taxation (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

COLLESTER, J. A. D. The cities of Clifton and Paterson appeal from a judgment of the Division of Tax Appeals in the Department of Treasury (hereafter "Division") which revised and corrected the county table of equalized valuations as promulgated by the Passaic County Board of Taxation (hereafter "county board") for the year 1963. The effect of the judgment was to change the ratio of assessed to true value of taxable real property in the City of Passaic (hereafter "Passaic") from 40.13% as fixed by the county board, to 43.93% as established by the sales ratio study of the State Director of the Division of Taxation (hereafter "Director").

The facts are not in dispute. On January 15, 1963 the county board, pursuant to *N. J. S. A.* 54:3–17, issued a preliminary county equalization table for the year 1963. The table listed the assessed value of real property in Passaic at the sum of $74,428,850, a ratio of assessed to true value of 40%, and an aggregate true value of $186,072,125. With the exception of Passaic, the equalization table was in all respects (with only immaterial variations) identical with the table of equalized valuations prepared by the Director on October 1, 1962 for use in the calculation and apportionment of state school aid to be granted to municipalities.

At a meeting with representatives of the municipalities of the county held on January 25, 1963, in accordance with *N. J. S. A.* 54:3–18, and at subsequent meetings, Passaic objected to the ratio of assessed to true value of 40%. It contended that the ratio of 43.93% established by the Director should be used. It argued that the ratios contained in the Director's

table of equalized valuations had been adopted and used by the county board for all municipalities within the county except Passaic and that the ratio of 40% set by the county board was discriminatory. On March 7, 1963 the county board adopted the equalization table fixing the ratio for Passaic at 40.13%. Passaic appealed to the Division of Tax Appeals, seeking a review and revision of the table pursuant to *N. J. S. A.* 54:2–37.

The controversy before the Division centered upon the sale by Botany Industries, Inc. of one of Passaic's largest industrial plants to one A. A. Rosen on August 1, 1961 for the sum of $2,199,750. The Director's sales ratio study included the Botany sale as a *bona fide* sale of Class 4 real property (industrial, commercial, income producing, &c.). Based on the 1961 assessment of $2,074,450 and the sales price of $2,199,750, the ratio of the sale was 94.29%. Use of this ratio resulted in an over-all ratio of assessed to true value of real property for Passaic at 43.93%.

The county board had rejected the ratio resulting from the Botany sale, and reduced the ratio of the sales price to the assessment from 94.29% to 76.23%. Although in all other instances of sales of property the county board accepted the relation between the sales price and the assessment used by the Director, in the case of the Botany property it used the relation between the sales price of $2,199,750 to $1,335,925, the amount to which the 1961 assessment had been reduced by a consent judgment entered on October 26, 1962 by the Division of Tax Appeals.

The Division held that the action of the county board in using the proportion between the sales price of the Botany property and the 1961 assessment as reduced by the consent judgment, instead of the assessment as originally certified, was legally unjustifiable. It further held that "in the absence of sound evidence to support the action of the County Board of Taxation, less injustice may result from the application of the uniform and objective sales ratio study [of the Director] than

from the use of the unsupported judgment of the County Board, no matter how impartially derived." It concluded that the action of the county board constituted an abuse of administrative discretion and entered judgment amending the county equalization table by fixing the ratio of assessed to true value for Passaic at 43.93%, the ratio as established in the Director's table.

The statutory duty of a county board of taxation is to ascertain and determine, "according to its best knowledge and information," the general ratio or percentage of full value at which the real property of each taxing district is assessed according to the tax lists laid before the board. It is required to prepare an equalization table showing the assessed valuation of real property in each district, the ratio or percentage, if any, by which the assessed valuation should be increased or decreased in order to correspond to true value, and the true value of real property within the district as determined by it. *N. J. S. A.* 54:3–17. After the equalization table is finally confirmed by the board, the valuations of real property in each district as equalized are deemed to be the true valuations of such property in computing the total ratables of each district for the apportionment of county taxes. *N. J. S. A.* 54:3–19.

The statute does not specify any plan or method for arriving at equalization in the county table. Any reasonable and efficient mode may be adopted. *Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371, 385 (1955); *Carteret v. Division of Tax Appeals,* 40 *N. J. Super.* 439, 446 (*App. Div.* 1956). The aim of the equalization process is to minimize, so far as possible, the unfair distribution of the county tax burden which is one result of varying average assessment ratios among the municipalities involved. *Carteret v. Division of Tax Appeals, supra,* at *p.* 447.

The table of equalized valuations, promulgated by the Director on or before October 1 in each year, pursuant to *N. J. S. A.* 54:1–35.1 *et seq.,* is prepared for use in the calculation and apportionment of distributions to be made for State

school aid for the fiscal year commencing the following July 1. It is not promulgated to control distribution of the county tax burden. The obligation to equalize assessments to that end rests with the county tax board. *Kearny v. Division of Tax Appeals,* 35 *N. J.* 299, 304 (1961) ; *Kingsley v. Division of Tax Appeals,* 40 *N. J.* 338, 346 (1963) ; *Passaic v. Passaic County Board of Taxation,* 27 *N. J.* 467, 472 (1958). Because the same method of determining the average ratios would probably be followed, as a matter of practice the Director's table is ordinarily accepted by the county board as *prima facie* correct and consequently usable in the achievement of its statutory aim. *Kearny v. Division of Tax Appeals, supra,* at *p.* 304. However, in *Kearny* the court stated:

"But such a course would not be warranted in the face of adequate evidence offered by a complaining municipality to demonstrate that the ratio ascribed to it is incorrect or plainly unjust. In that event, the Board would not be fulfilling the statutory mandate to 'ascertain and determine according to its best knowledge and information, the general ratio or percentage of true value at which the real property of each taxing district is in fact assessed \* \* \*.' *N. J. S. A.* 54:3–17."

And in *Passaic v. Passaic County Board of Taxation, supra,* 27 *N. J.,* at *pp.* 471–2, where the municipality challenged the authority of the county board of taxation to change the Director's table, arguing that "all the other counties had used the Director's table" and the board "had no right to tamper with the Director's table," the court held that the board's readjustment of the Director's ratios to accord with all relevant data as of the statutory assessment date was the board's peremptory duty under the statute.

In the instant case the county board determined that acceptance of the Director's ratio for Passaic would be unjust and unfair to other municipalities in the county because the Director's ratio was arrived at by use of the assessed value of the Botany property as it appeared on the tax list for 1961. Its decision was based primarily on the tax history of the Botany property.

In February 1962 this court affirmed judgments of the Division of Tax Appeals reducing assessments on the Botany property for the years 1955 through 1958, as follows:

1955 assessment of $2,216,350 reduced to $801,400
1956 assessment of $2,095,450 reduced to $782,900
1957 assessment of $2,090,450 reduced to $782,900
1958 assessment of $2,090,450 reduced to $782,900

When the aforesaid judgments were affirmed there were then pending before the Division of Tax Appeals certain appeals taken by Botany on assessments for the years 1959, 1960 and 1961. As a result of the Appellate Division decision, Botany and Passaic entered into a settlement of the 1959–1961 appeals pending before the Division. By agreement, judgments "on the merits" were entered by the Division on October 26, 1962 as follows:

1959 assessment of $2,074,450 was reduced to $1,000,000
1960 assessment of $2,074,450 was reduced to $1,000,000
1961 assessment of $2,074,450 was reduced to $1,335,925

(Parenthetically, it is noted that the final assessments entered by the Division of Tax Appeals for 1959, 1960 and 1961 were higher than the final assessments as determined by the Division for 1958 and prior years, and to that extent, under the "freeze" act, N. J. S. A. 54:2–43, the municipality received a benefit.)

The county board determined that the Botany property had suffered from "chronic over-assessment," as indicated by the tax history. It may be noted that the Botany property was assessed by the Passaic assessor at a valuation of $1,879,600 for 1962 and, despite the "freeze" act, for 1963 at $1,901,550. (The 1963 assessment included an improvement to the property valued by the assessor at $49,650, which he assessed at $19,860, based upon 40% of the value of the improvement.)

The tax history clearly supports the conclusion of the county board that the assessor consistently over the years between 1955 and 1963 assessed the property at figures in-

flated beyond the ratio at which other Passaic properties were assessed. The effect of the overassessment for 1961—an assessment of $2,074,450—would have had a severe impact upon the ratio of assessed to true value for the City of Passaic. Use of this inflated assessment would have resulted in a ratio of 43.93% instead of 40.13%. The effect would have been to lower the county tax contributions by Passaic and to increase the contributions by other municipalities in the county.

The county board equalized the assessments by use of the 1961 assessment of $1,335,925, as adjusted by the judgment of the Division, instead of the inflated assessment of $2,074,-450, in order to correct that inequity and injustice.

In holding that such action was "legally unjustifiable" the Division relied upon *Berkeley Heights v. Division of Tax Appeals,* 68 *N. J. Super.* 364 (*App. Div.* 1961), certification denied 36 *N. J.* 138 (1961). We think *Berkeley* is distinguishable from the instant case. In *Berkeley* the county board adopted the ratio established by the State Director's table. In arriving at the ratio for Class 4 property, the Director had relied upon one sale wherein property assessed at $1,250 had been sold for $10,000, resulting in a ratio for that sale of 12.50%. The municipality contended that the sale was not a fair sampling of Class 4 property, and therefore the ratio was inaccurate and arbitrary. It argued that 82% of the Class 4 property was owned by Bell Telephone Laboratories which, it alleged, was assessed at 20% of true value. It also relied heavily upon a consent judgment entered by the Division of Tax Appeals between Bell and the township whereby the assessed value of Bell was established at 20% of the true value. The court, upon reviewing the record, held that the testimony of the assessor that all property was assessed at 20% of true value was erroneous and that the assessed value of Bell's property, using the figures in the consent judgment, was 21.6%. The court further held that the consent judgment related only to assessed valuation and (there having been no sale of Bell's property) did not establish a "sales price" or "sales value." It is clear that the court concluded that the consent judgment

could not be utilized in *Berkeley* to arrive at a ratio of assessed to true value because there had been no sale of the Bell property. Furthermore, in *Berkeley* this municipality was attempting to use the Bell consent judgment as evidence in its favor; whereas here the county board used it against Passaic as an admission that it had overassessed the Botany property. *Berkeley* did not hold that a consent judgment may never be used—it merely held that the consent judgment there involved could not be used.

In the present case, as already indicated, a large tract of industrial property was involved and the sale thereof had a profound effect on the ratio of the City of Passaic as determined by the Director. It is to be noted that when the Director promulgated his table of equalization as of October 1, 1962, the consent judgment reducing the 1961 assessment on the Botany property from $2,074,450 to $1,335,925 had not been entered. If the county board was required to use the 1961 assessment as originally certified, and which clearly was based on an overassessment, a substantial detrimental effect would have resulted to other municipalities of the county by increasing their shares of the county tax burden to the corresponding advantage of the City of Passaic. We do not believe that a municipality should be afforded a county tax advantage based upon a consistent overassessment of real property by its assessor.

 The very nature of the formula used in reaching a ratio of assessed to true value would seem to call for an adjustment and correction when specific facts are revealed to a county board, which facts, when given proper effect, demonstrate that the share of county tax burden imposed on a municipality, *or municipalities,* is dramatically or substantially excessive. *Cf. Kearny v. Division of Tax Appeals, supra,* 35 *N. J.,* at *p.* 310. In the discharge of its legislative or *quasi*-legislative function of constructing its equalization table, the county board of taxation has a duty "to seek all enlightenment that will help it so far as possible to avoid errors in its ultimate determination of assessment ratios." *Kearny v. Divi-*

*sion of Tax Appeals, supra,* at *p.* 311; *Passaic v. Passaic County Board of Taxation,* 18 *N. J., supra,* at *p.* 389. And it is to be observed that fairness and equality are essential ingredients in the equalization process.

■ Here the county board, in establishing its ratio for Passaic, merely corrected the 1961 assessment of the Botany property by using the assessed valuation agreed upon by the property owner and the municipality in settlement of the appeal pending before the State Division which resulted in the entry of a "judgment on the merits" fixing the 1961 assessment at $1,335,925.

Under the circumstances of this case we are satisfied that the county board not only had the authority to compute its ratio based on the adjusted assessed valuation but that fairness and justice to other municipalities of the county called for the correction of the overassessment for 1961 which had been imposed by the tax assessor.

In view of our opinion, as above expressed, we deem it unnecessary to pass upon the other points raised by the appellants.

The judgment of the Division of Tax Appeals is reversed and the 1963 table of equalization as determined by the Passaic County Board of Taxation is affirmed.